# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **CLIFFORD OWENSBY,** | : | **CASE NO. 3:21-CV-343** |
| **Plaintiff,** | : | **JUDGE MICHAEL J. NEWMAN** |
| vs. | : | |
| **CITY OF DAYTON, et al.** | : | **AFFIDAVIT OF LT. COL. ERIC HENDERSON** |
| **Defendants.** | : | |
| | : | |
| | : | |

STATE OF OHIO      )
                   ) ss:
COUNTY OF MONTGOMERY )

Lt. Col. Eric Henderson, after being duly cautioned and sworn, states the following:

1. I have personal knowledge of all information contained in this affidavit, and I am competent to testify to all of the facts contained in this affidavit and to testify to all matters stated herein.

2. I have worked for the Dayton Police Department for over 24 years, and I am currently the Deputy Director and Assistant Chief of the Dayton Police Department, responsible for overseeing the day-to-day operations of the various divisions within the Department.

3. In my position, I am familiar with the policies and practices of the City of Dayton Police Department, including those policies and practices involving the investigation of use of force and discipline of officers, as well as investigations regarding any claims of discrimination against Dayton Police Officers or employees, including disability discrimination.

4. I am also familiar with the training provided to Dayton Police Officers.

5. The official policies and procedures of the City of Dayton Police Department are written and formally adopted in the Dayton Police Department's Manual of Procedure ("MOP").

1

6. Pursuant to the Dayton Police Department's MOP 3.03-2, any time a police officer uses force or is alleged to use force, the officer must notify an on-duty supervisory officer, and an investigation of the use of force is conducted.

7. Where the investigation concludes that excessive force was used, charges and specifications for discipline are brought against the officers involved.

8. Based on my experience with the Dayton Police Department, the use of force or alleged use of force claims are investigated, and officers found to have used excessive force have discipline charges brought against them.

9. Prior to becoming Dayton Police Officers, Officers Vincent Carter and Wayne Hammock, were required to pass an extensive background check, which includes a criminal background check.

10. Officers Carter and Hammock completed the City of Dayton's twenty-six-week police academy that provided extensive training on topics including but not limited to the use of firearms, use of force, defensive tactics, and search and seizure law. This met and exceeded the mandatory training requirements for Ohio police officers set by the Ohio Police Officers Training Academy. In addition, Officers Carter and Hammock were provided with additional on-the-job training from a field training officer.

11. The Dayton Police Academy provides 1,360 hours of basic training and instruction to new recruits before being sworn in as City of Dayton Police Officers. This is significantly above the requirements mandated by the Ohio Peace Officer Training Academy, which only requires 737 hours of basic training.

12. In addition to the MOP, the City of Dayton Police Department enforces Citywide policies prohibiting discrimination against individuals based upon a disability.

13. All Officers, including Officers Hammock and Carter, must follow the MOP and all applicable Human Resource policies in the performance of their duties as Police Officers, which includes a prohibition of discrimination against individuals based upon a disability.

14. The City of Dayton Police Department is aware of the need to provide reasonable accommodations and to refrain from intentionally discriminating against any individuals due to their disability.

15. The Police Department is not aware of any prior incidents involving its Police Officers resulting in a violation of state or federal laws prohibiting

disability discrimination, or failure to provide reasonable accommodations to disabled citizens, including those lawfully detained during a traffic stop.

16. The Police Department is not aware of any mandates, guidelines, or laws which require providing wheelchairs or other assistive devices to disabled individuals who are lawfully detained during a traffic stop.

17. Police Officers are trained to use discretion during traffic stops to ensure their safety and the safety of all occupants of a vehicle during a traffic stop.

18. The applicable Dayton Police policy during this incident allowed officers to employ drug dogs for a free air sniff during traffic stops. Pursuant to that policy, during the deployment of the canine unit, the vehicle must be turned off and occupants must be removed from the vehicle prior to the free air sniff. Police personnel are encouraged to request canine services when an appropriate investigative need arises.

19. The reason for the removal of occupants is to prevent the occupants from distracting the dog through movement, noise, or otherwise from performing its job and for both officer and suspect safety. It prevents the suspect from driving off during the free air sniff and also prevents the dog from potentially biting someone in the car that makes sudden movements that agitate the canine.

18. Mr. Owensby was charged under R.C. 4511.81(c) for failing to properly restrain a child in a vehicle and R.C. 4513.241(c) for excessive vehicle tint.

19. On or about October 25, 2021, Mr. Owensby was tried and found guilty on both charges in the Dayton Municipal Court.

Further affiant sayeth naught.

Lt. Col. *[signature]*
Lt. Col. Eric Henderson

Sworn to before me, a Notary Public in and for the State of Ohio and subscribed in the presence by Lt. Col. Eric Henderson this 18 day of May 2023.

*[signature]*
Notary Public

WHITNEY M TRUMP
Notary Public, State of Ohio
My Commission Expires:
September 20, 2025

3